[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for unjust enrichment brought by the plaintiff against the defendant to recover an equal share of the equity in property accumulated while the parties were living together in an unmarried relationship from 1994 to 1999. The parties are both divorced. Plaintiff is a medical secretary and defendant has his own automotive business.
Shortly after their relationship began in the Spring of 1994, defendant moved into plaintiff's apartment. At the time, defendant was paying alimony, support and property settlement to his first wife and also paying back a $60,000 loan he obtained to purchase his ex-girlfriend her house. Both prior relationships ended due to defendant's infidelity.
In 1995, the parties became engaged to be married, and in November 1996, they purchased a condominium at 71 Salem Walk in Milford, Connecticut.
Although plaintiff contributed $2,000 from her savings towards the purchase of the condominium and paid all of the mortgage, taxes, condominium fees and utilities from November 1996 until September 1998, the property was purchased and held continuously in defendant's name. Plaintiff testified that she could not get the time away from work to tend to the purchase arrangements and closing. She also was paying off an Internal Revenue Service lien which she did not want to have lodged against the real estate.
The deposit on the condominium was $6,000 and defendant paid another $9,380.00 at the closing which he stated came from his mother, a money market account and a credit card loan. (Def. Ex. 3). Defendant did not invade his $11,000 savings account for the CT Page 4145 property, except for incidentals. He did deposit and withdraw about $6000 on November 25, 1996 and he also withdrew $2,000 from his checking account on the date of the closing, November 26, 1996. (Pl. Exh. R). Sometime after the closing on the condominium, defendant essentially repaid himself $9400 by taking out a second mortgage of at least that amount which was then repaid from the equity when the condominium was sold. (Pl. Exh. N).
Plaintiff was under the impression that defendant was broke and was willing to support him in exchange for his companionship. Plaintiff also contributed to the improvements and upkeep of the condominium, as well as its financial obligations. Defendant made contributions to improvements on the property through "barter" arrangements from his business dealings. Defendant also used his business to assist plaintiff with insurance and a car and contributed the travel and entertainment and groceries.
Plaintiff testified both parries considered the condominium to be their home, but they also planned on getting married and buying a house together. She trusted defendant and was not concerned about the actual title to the real estate. It was simply more convenient for her to have him handle the arrangements while she paid the bills.
In September of 1998, defendant showed plaintiff the home he had found for them at 128 Hill Street in Milford which was to be purchased from an estate for $110,000. Again, defendant asked plaintiff to contribute $5,000 to the down payment, which she did on October 20, 1998. (Pl. Exh. M) In fact, defendant had already placed a deposit on the property and entered into a purchase agreement on September 15, 1998. (Def. Exh. 7 8). Plaintiff's $5,000 represented the bulk of the funds needed to close on the property on October 21, 1998. The balance was paid by a bridge loan until the Salem Walk condominium sold. (Pl. Exh. N) Defendant did not tell plaintiff that he had already purchased the property himself, but led her to believe that they could move in and the purchase would not be final until the condominium sold. He did assume the mortgage payments at this time, but plaintiff continued to pay the condo fees and the utilities on both properties. Plaintiff believed the parties were going to be married and own the home jointly.
The parties took possession of Hill Street at Thanksgiving 1998 and moved into the house January 1, 1999. Thereafter, both CT Page 4146 parties contributed to the improvements.
Unbeknownst to plaintiff, defendant sold the condominium for $102,500 on Monday, March 29, 1999. (Pl. Exh. P). Defendant promptly picked a fight with plaintiff on Easter Sunday, April 4, and broke off their engagement. At that time, defendant had the $45,000 net proceeds from the sale of the condominium which essentially plaintiff had paid for, plus her $5,000 contribution to the Hill Street property. Instead of giving plaintiff all or a portion of these proceeds, defendant gave her back $3,000 to buy a car and move out. Defendant then completed the purchase of the Hill Street property in his name alone. (Def. Exh. 10) At that time, the Hill Street property had a value of $133,000. (Def. Exh. 11)
This court has never seen such a blatant case of unjust enrichment. It is most generous of plaintiff to seek to recover only an equal share of the equity accumulated from her contributions to these properties.
 "Unjust enrichment is a very broad and flexible doctrine; Cecio Bros., Inc. v. Greenwich, 156 Conn. 561, 564 (1968) which has as its basis that" 'it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff.'" National CSS, Inc. v. Stamford, 195 Conn. 587, 597 (1985) Its three basic requirements are (1)that the defendants were benefitted, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment. Montanaro Bros. Builders,. Inc. v. Snow, 4 Conn. App. 46, 53 (1985). All the facts of each case must be examined to determine whether the circumstances render it "just or unjust, equitable or inequitable, conscionable or unconscionable," to apply the doctrine. Cecio Bros., Inc. v. Greenwich, supra, 565; Bolmer v. Kocet, 6 Conn. App. 595, 612-13 (1986).
The Court finds all of these requirements are met in this case.
Although both parties briefed issues of Statute of Frauds and contract, the prevailing issue in this case is unjust enrichment, not breach of agreement or title to real estate. In any event, the Court finds that defendant included plaintiff on the application for financing and cashed plaintiff's check to him of CT Page 4147 $5,000 towards the purchase of the real estate of the Hill Street property in October 1998, which acts are sufficient writings and part performance to take this case outside of any statute of frauds problem and also establish the parties' agreement to own their home jointly. (Def. Exh. 2 and Pl. Exh. M).
Accordingly, the Court awards plaintiff damages by way of restitution in the amount of $36,500 which represents one-half of the $73,000 in equity in the Hill Street property as of April 1999.
Judgment should also enter for plaintiff on the counterclaim, which was withdrawn in open court.
SEQUINO, J.